UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HUMBERTO FEIJOO, | ) |
| Plaintiff, | ) |
| v. | ) |
| MASSACHUSETTS DEPARTMENT OF CORRECTIONS, KHALID N. KHAN, ROBERT MURPHY, VANESSA CAMERON, and MHM SERVICES, INC., | ) Civil Action No. 10-11951-DJC |
| Defendants. | ) |

## MEMORANDUM AND ORDER

CASPER, J.                                                                                           March 14, 2012

### I.     Introduction

Plaintiff Humberto Feijoo, an inmate in the Massachusetts Department of Corrections ("DOC") system who was formerly housed in the DOC facility Bridgewater State Hospital ("Bridgewater"), brought this action against the DOC and Bridgewater Superintendent Robert Murphy (collectively, the "State Defendants"), as well as MHM Services, Inc. ("MHM"), which provides services at Bridgewater, and MHM employees Dr. Khalid N. Khan and Certified Nursing Assistant Vanessa Cameron (collectively, the "MHM Defendants"), alleging various violations of federal and state law arising from the conditions of Feijoo's confinement while in Bridgewater. Both the State Defendants and the MHM Defendants have moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the Defendants' motions are GRANTED.

### II.    Burden of Proof and Standard of Review

To survive a motion to dismiss, a complaint "must 'give the defendant fair notice of what

the . . . claim is and the grounds upon which it rests,' and allege 'a plausible entitlement to relief.'" Decotiis v. Whittemore, 635 F.3d 22, 29 (1st Cir. 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 559 (2007)). As the First Circuit has stated, "[i]n resolving a motion to dismiss, a court should employ a two-pronged approach." Ocasio–Hernández v. Fortuño–Burset, 640 F.3d 1, 12 (1st Cir. 2011) (applying Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009) and Twombly, 550 U.S. at 555). "Step one: isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz v. Republican State Leadership Comm., 2012 WL 414264, at *4 (1st Cir. February 10, 2012). "Step two: take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Id. If they do, "the claim has facial plausibility" and can withstand a motion to dismiss. Ocasio–Hernández, 640 F.3d at 12 (quoting Iqbal, 129 S.Ct. at 1949).

## III. Factual Allegations

The following summary is based upon the allegations in Feijoo's operative amended complaint, D. 10, and in a prior settlement agreement between Feijoo and the DOC, D. 1-1, incorporated by reference in the complaint, which the Court must accept as true for the purposes of this motion.

On May 2, 1997, Feijoo and the DOC entered into a settlement agreement to resolve various claims Feijoo had brought in state court against the DOC arising from the diagnosis, care and treatment of Feijoo's multiple sclerosis. Compl. Exh. 1, Settlement Agreement, D. 1-1 at 2. At the time the agreement was signed, Feijoo was housed in DOC's Old Colony Correctional Center. D. 1-1 at 2. Under the terms of the agreement, the DOC recognized that Feijoo suffers from multiple sclerosis and that it is in Feijoo's best interest to be housed in the general prison population for as

long a period as possible, except when medical necessity requires some other form of clinical or hospital confinement. D. 1-1 at 3. The DOC agreed to provide reasonable accommodations including a handicapped-accessible cell, a unit runner to assist Feijoo in cleaning his cell when Feijoo's medical condition prohibits him from doing so, and assistance in the chowhall and the foodline when Feijoo's medical condition necessitates such assistance. D. 1-1 at 3.

On September 19, 2008, Feijoo was transferred to Bridgewater, where he was housed in a dormitory setting. Am. Compl., D. 10 at ¶ 9.[1] Feijoo uses a wheelchair, and he asserts that the gym and other facilities at Bridgewater are not equipped to allow him access. D. 10 at ¶ 11. Additionally, Feijoo's sleeping situation at Bridgewater subjected him to extreme discomfort and embarrassment. D. 10 at ¶ 24. He further asserts that while at Bridgewater, he was forced on multiple occasions to wait prolonged periods, at least once for up to four to six hours, for Defendant Cameron's assistance in using the toilet, and that he was forced to go days without a shower based on Defendant Cameron's judgment and decision. D. 10 at ¶¶ 13-14, 23. He also asserts that the rules and regulations at Bridgewater preclude the opening of windows and preclude Feijoo from having his own personal hygiene articles. D. 10 at ¶¶ 16, 18.

Feijoo asserts that he filed numerous grievances regarding the aforementioned issues and that the DOC has not taken any action regarding his grievances. D. 10 at ¶ 19. He has not attached any documentation of his grievances to his complaint, D. 1, D. 10, but asserts that he "has thusly exhausted his administrative remedies." D. 10 at ¶ 19.

---

[1] In separate proceedings, Feijoo has stated that after his incarceration at Old Colony but prior to his incarceration at Bridgewater, he was housed at the DOC's MCI-Shirley facility ("Shirley"), where he was housed in a single handicapped-accessible air-conditioned cell. State Court Complaint in Feijoo v. Clarke, Case No. PLCV2009-00031 (Plymouth Super. Ct., case filed Jan. 8, 2009), attached as Exh. A to State Def. Memo, D. 24-1 at 4.

## IV.     Procedural History and Additional Background

Feijoo initiated this case by filing a *pro se* complaint on November 5, 2010, that incorporated a copy of Feijoo's May 2, 1997 settlement agreement with DOC. D. 1, 1-1. He was assigned court-appointed counsel on January 3, 2011, D. 8, and with the assistance of counsel Feijoo filed an amended complaint on January 20, 2011, which remains the operative complaint in this action. D. 10. The amended complaint includes eight separate counts based on the aforementioned factual allegations: 1) violation of the Eighth and Fourteenth Amendments to the United States Constitution; 2) violation of the federal Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*; 3) violation of federal law set forth at 42 U.S.C. § 1983; 4) a state law tort claim of negligence (leveled against only the DOC, not against Defendant Murphy or the MHM Defendants); 5) a state law tort claim of breach of contact (leveled against only the DOC, not against Defendant Murphy or the MHM Defendants); 6) violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794; 7) violation of Amendment 114 to the Massachusetts Constitution; and 8) violation of the federal Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997 *et seq.* D. 10 at 6-15. The amended complaint sought declaratory relief with regard to Feijoo's federal law claims under the Eighth and Fourteenth Amendments, the ADA, the PLRA, 42 U.S.C. § 1983 and his state law claims under the Massachusetts Constitution and state law regarding breach of contract, sought injunctive relief requiring the DOC to transfer Feijoo out of Bridgewater and to comply with the May 2, 1997 settlement agreement and requiring both DOC and MHM to "immediately implement procedures to address the issues in this complaint," and sought compensatory and punitive damages as well as attorney's fees and costs. D. 10 at 16-18.

On January 8, 2009, long before filing this action in federal court, Feijoo filed a similar lawsuit in state court. Feijoo v. Clarke, Case No. PLCV2009-00031 (Plymouth Super. Ct., case filed

4

Jan. 8, 2009); Exh. A to State Def. Memo (verified complaint in state court action), D. 24-1. In that case, Feijoo alleged facts roughly identical to the allegations set forth in the operative complaint and brought a claim for breach of contract that is roughly identical to the breach of contract claim in this case. D. 24-1 at 3-7. Feijoo sought a preliminary injunction in state court, which was denied without prejudice on February 10, 2009. Plymouth Superior Court Docket, attached as Exh. B to State Def. Memo, D. 24-2 at 4. On May 7, 2009, the DOC filed its answer to Feijoo's state court complaint. D. 24-2 at 5. That case remains pending. D. 24-2 at 5.

On April 15, 2011, Feijoo was transferred from Bridgewater to the Massachusetts Correctional Institution in Shirley.

The State Defendant and the MHM Defendants have filed separate motions to dismiss and the Court has heard oral argument on the motions.

## V. Defendants' Motion to Dismiss

### A. Constitutional Claims

#### 1. Eighth Amendment Claim

The Eighth Amendment of the United States Constitution prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, and applies to the federal government and state governments alike via the Fourteenth Amendment. Robinson v. California, 370 U.S. 660, 666 (1962); Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 462 (1947). To survive a motion to dismiss, Eighth Amendment claims brought on the basis of conditions of confinement must allege that the conditions impose "unnecessary or wanton infliction of pain" on a prison inmate, Restucci v. Clarke, 669 F. Supp. 2d 150, 155 (D. Mass. 2009) (quoting Gregg v. Georgia, 428 U.S. 153 (1976)), and "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive

risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). This is a subjective test, as "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

Feijoo's amended complaint falls short of these standards. Feijoo's allegations of being forced to wait on an unspecified number of occasions for hours to use the toilet, being forced to wait days to shower, and being assigned uncomfortable sleeping arrangements, which the Court must accept as true for the purposes of this motion, suggest acutely unpleasant treatment. However, although Feijoo alleges that the treatment caused "a wanton and unnecessary infliction of pain on Feijoo," D. 10 at ¶ 26; see ¶¶ 23-25, liability cannot attach unless the amended complaint plausibly alleges that through such treatment Feijoo was exposed to an "excessive risk to inmate health or safety" or "substantial risk of serious harm," Farmer, 511 U.S. at 837, and Feijoo's amended complaint does not do so.[2] Moreover, even if this Court had concluded that the amended complaint had included sufficient factual pleadings in this regard and there were sufficient factual allegations that each of the Defendants were aware of the underlying facts,[3] there are no allegations in the pleading that an inference of a substantial risk of serious harm could be drawn or that the Defendants actually drew the conclusion that such treatment would lead to a risk to Feijoo's health or safety.

---

[2] To be sure, Feijoo's amended complaint does state that the alleged "conditions would . . . pose a an unreasonable risk of serious damage to Feijoo," D. 10 at ¶ 27, but absent any factual support in the amended complaint, this statement falls within the category of "legal labels and conclusions" that courts in this circuit are instructed to "isolate and ignore" when resolving a motion to dismiss. Schatz, 2012 WL 414264 at *4. This statement is the sole basis for Feijoo's lengthy but unavailing discussion of whether the various defendants showed a reckless disregard for his well-being in violation of the Eighth Amendment. Pl. Memos, D. 27 at 7-9; D. 28 at 4-6.

[3] The Court notes that Feijoo alleges that he "filed numerous grievances" about these matters, D. 10 at ¶ 19, but the amended complaint does not indicate the nature or timing of these grievances or which of the named defendants were aware of these grievances.

Farmer, 511 U.S. at 837; see also Pandey v. Freeman, 66 F.3d 306 (Table), at *2-*3 (1st Cir. 1995) (affirming dismissal where "the pleadings fail to allege that the defendant warden was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'") (quoting Farmer, 511 U.S. at 837); Kelley v. Cabral, 2008 WL 2817100, at *2 (D. Mass. July 21, 2008) (dismissing Eighth Amendment claim where plaintiff failed to allege that the Defendant was aware of risk of harm). These absences in Feijoo's amended complaint compel dismissal of his Eighth Amendment claim.

### 2. Fourteenth Amendment Claim

Based on Feijoo's amended complaint, it appears that he invokes the Fourteenth Amendment only for the purpose of applying the Eighth Amendment, not for asserting a separate due process claim. D. 10 at ¶¶ 21-31. In an abundance of caution, however, the Court will analyze Feijoo's amended complaint as if it did allege a separate due process claim brought under the Fourteenth Amendment.

"The due process clause of the Fourteenth Amendment 'protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake.'" Sires v. Heffernan, 2011 WL 2516093, at *7 (D. Mass. June 21, 2011) (quoting Wilkinson v. Austin, 545 U.S. 209, 221 (2005)). "An inmate does not, however, have a liberty interest in avoiding a particular condition of confinement unless the condition 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Id. (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). Transfers from one facility to another that do not alter the duration of an inmate's sentence will generally not meet this threshold, nor will "conditions no different from those ordinarily experienced by large numbers of other inmates serving their sentences in customary fashion." Dominique v. Weld, 73 F.3d 1156,

1160 (1st Cir. 1996). Here, Feijoo does not allege that his transfer to Bridgewater altered the duration of his sentence, nor does he allege that his living arrangements at Bridgewater were different from other inmates staying at the medical facility. Feijoo offers a handful of cases in support of his proposition that "drastic change[s] in conditions" trigger due process protections, Pl. Memo, D. 27 at 6, but these cases not only included treatment above and beyond the typical hardships of time in prison but also make clear just how far removed Feijoo's treatment is from the sort of mistreatment that offends due process. See Vitek v. Jones, 445 U.S. 480, 491-94 (1980) (involving the plaintiff's involuntary commitment to a mental hospital); Washington v. Harper, 494 U.S. 210, 221-222 (1990) (involving the "unwanted administration of antipsychotic drugs" to a mentally ill prisoner). The allegations in Feijoo's amended complaint cannot on their own support a freestanding Fourteenth Amendment claim.

Feijoo argues instead that his settlement agreement with DOC creates a liberty interest. Pl. Memo, D. 27 at 5. Feijoo does not assert that his settlement agreement entitled him to some sort of additional process above and beyond that accorded to other inmates prior to his transfer to Bridgewater, nor does the agreement appear to create any such entitlement, see Settlement Agreement, D. 1-1 at 2-6, and he does not claim that any breach of the settlement agreement would be not only a breach of contract cognizable under state law but also a *per se* violation of the Fourteenth Amendment's due process clause.[4] Instead, Feijoo states he "is simply seeking a hearing on the liberty interests the DOC created by signing the settlement agreement" and asserts that "[a]

---

[4] The lone authority Feijoo offers during his discussion of due process is Wolff v. McDonnell, 418 U.S. 539 (1974), the seminal case holding that due process applies to liberty interests as well as property interests. Wolff, however, does not discuss whether a settlement agreement creates a freestanding liberty agreement independent of the tests set forth by Wolff's progeny, including Sandin, for determining whether a liberty interest is present.

8

hearing on the actions and motivations of the DOC would be appropriate at this time based on the issues involved in this action." Id. at 6. Essentially, Feijoo seeks not relief for any federal due process violation but rather a hearing on his state law breach of contract claim. The Court discusses the resolution of Feijoo's breach of contract claim in the discussion below of Feijoo's state law claims.

### B. Federal Statutory Claims

#### 1. ADA and Rehabilitation Act Claims

"The ADA and the R[ehabilitation] A[ct] both prohibit discrimination in the provision of public services." Partelow v. Massachusetts, 442 F. Supp. 2d 41, 47 (D. Mass. 2006). Section 504 of the Rehabilitation Act provides, in relevant part: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a) (2006). Similarly, Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2006); see also Theriault v. Flynn, 162 F.3d 46, 48 n. 3 (1st Cir. 1998) (noting that "Title II of the ADA was expressly modeled after Section 504 of the Rehabilitation Act, and is to be interpreted consistently with that provision."). Where, as here, a plaintiff raises essentially identical claims under the ADA and the Rehabilitation Act and those claims do not turn on any of the various differences between the two statutory schemes, courts are free to address the claims "simultaneously." Partelow, 442 F. Supp. 2d at 47 (collecting cases).

9

Under the ADA and the Rehabilitation Act, a plaintiff must show "(1) that he is a qualified individual with a disability; (2) that he was . . . excluded from participation in . . . a public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion . . . or discrimination was by reason of [his] disability." Parker v. Universidad de P.R., 225 F.3d 1, 5 (1st Cir. 2000). The discrimination must be intentional. Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 126 (1st Cir. 2003).

Here, nothing in Feijoo's amended complaint alleges or even suggests intentional discrimination. He does not assert that DOC intended to discriminate against him on account of his disability by transferring him to Bridgewater, and the amended complaint explicitly states that his extended waits to use the toilet are caused by "the procedures used at Bridgewater" rather than any discriminatory act. D. 10 at ¶ 13. Similarly, the amended complaint states that "Feijoo is not allowed to have his own personal hygiene articles based on the rules and regulations at Bridgewater" rather than as a result of intentional discrimination against him. D. 10 at ¶ 18. Finally, the amended complaint asserts that Defendant Cameron made decisions that prevented Feijoo from showering for days at a time, but it explicitly states that these decisions were made because Defendant Cameron "is not qualified to deal with the issues and needs of Feijoo," not because she was intentionally discriminating against him on account of his disability. D. 10 at ¶ 15. In the absence of any allegation of intentional discrimination, Feijoo's ADA and Rehabilitation Act claims cannot withstand a motion to dismiss.

### 2. 42 U.S.C. § 1983 and PLRA "Claims"

Feijoo's complaint includes claims for relief under 42 U.S.C. § 1983 and the PLRA that are distinct from the complaint's other various claims under federal constitutional and statutory

10

provisions. D. 10 at ¶¶ 45-59. Section 1983 is merely a statutory mechanism for remedying violations of other federal rights, and on its own "§ 1983 does not provide any substantive rights at all." Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979). A complaint cannot proceed on a § 1983 claim where, as here, the other claims in the complaint fail to "colorably assert" a violation of federal rights. Local Union No. 12004, United Steelworkers of Am. v. Massachusetts, 377 F.3d 64, 75 (1st Cir. 2004). Similarly, while the PLRA does allow the Attorney General of the United States to bring civil suit in certain circumstances, 42 U.S.C. § 1997a, it does not create a private right of action for inmates - to the contrary, it explicitly restricts the manner in which an inmate may bring civil suit, 42 U.S.C. § 1997e - and is not the basis for a freestanding claim. See Sosa v. Lantz, 660 F. Supp. 2d 283, 288 (D. Conn. 2009) (PLRA "permit[s] the U.S. Attorney General to bring suit for constitutional deprivations to state prisoners where 'such deprivation is pursuant to a pattern or practice,' § 1997a(a), and to intervene in individual lawsuits where he or she has 'reasonable cause to believe' that the 'egregious or flagrant' conditions at issue in the suit 'is pursuant to a pattern or practice,' § 1997c(a)(1), and while it does not preclude '[s]uit[s] by prisoners,' it conditions such suits on the exhaustion of administrative remedies, permits *sua sponte* dismissal of claims in the same circumstances as 28 U.S.C. § 1915A, and provides prisoners no substantive rights, see § 1997e"); see also Nilsson v. Massachusetts Dept. of Correction, 2011 WL 1235474, at *6 (D. Mass. March 30, 2011) (noting that "[a]mong other things, the statute requires that prisoners exhaust administrative remedies before filing suit"). Accordingly, the "claims" in Feijoo's amended complaint brought pursuant to 42 U.S.C. § 1983 and the PLRA are mechanisms by which his other claims can be resolved, not freestanding claims upon which relief can be granted.

Accordingly, Feijoo's amended complaint fails to state any plausible claim under federal law

and his various federal claims must be dismissed.

## C. State Law Claims

Federal courts are courts of limited subject matter jurisdiction. This Court's jurisdiction over Feijoo's claims are based on federal question jurisdiction, 28 U.S.C. § 1331, and Feijoo urges the Court to exercise supplemental jurisdiction over his state law claims pursuant to the Court's authority under 28 U.S.C. § 1367. D. 10 at ¶ 1. When, as now, the "federal claims [have been] dismissed before trial," the Supreme Court has made clear that "the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). "As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims." Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) (citing Gibbs, 383 U.S. at 726). This resolution seems particularly appropriate here, since Feijoo has live litigation pending in the state court and he may endeavor to present his state law claims in that proceeding. Indeed, as discussed above, Feijoo has already raised a breach of contract claim in state court that is roughly identical to the one included in his amended complaint filed with this Court. D. 24-1 at 3-7. Accordingly, the state law components of Feijoo's amended complaint will be dismissed without prejudice.

Because the Court dismisses the amended complaint for the reasons discussed above, the Court need not address the State Defendants' argument that Defendant Murphy is not subject in his official capacity to suits brought pursuant to 42 U.S.C. § 1983, the MHM Defendants' arguments that Defendant Khan is not properly a party in this case and that Defendants Khan and Cameron are not subject to suit in their individual capacity, and the arguments raised by all Defendants with

regard to both sovereign and qualified immunity, administrative exhaustion and the mootness of Feijoo's requests for injunctive relief in light of his recent transfer from Bridgewater to Shirley, or Feijoo's various arguments in response.

## VI. Conclusion

For the foregoing reasons, the Defendants' motions to dismiss are GRANTED.

**So ordered.**

/s/ Denise J. Casper
United States District Judge
